JUSTICE SHEA,
dissenting.
¶27 The Cascade County Board of Commissioners terminated Stacey Bird from her position as the County’s Human Resources Director on a two-to-one vote. The dissenting Commissioner testified that he did not believe termination was warranted because, after reviewing the charges against Bird, and her responses to those charges, he found her responses to be “logical” and characterized the situation as “kind of a *79 he said / she said on some of these things, [that] wasn’t really definitive.” It seems incongruous to say the least, therefore, that after drawing all reasonable inferences in Bird’s favor, those same “he said / she said” allegations that were not “really definitive,” such that one of the three individuals responsible for deciding Bird’s fate concluded she should not be terminated, have in this Court’s view constituted a complete absence of material fact justifying Bird’s termination without even a jury trial.
¶28 The Court dismisses the fact that one of the three individuals who were responsible for making the decision to terminate Bird did not think she should be terminated by comparing this case to Sullivan. Opinion, ¶ 21. This is not exactly an apples-to-apples comparison. In Sullivan, the plaintiff argued that he raised a genuine issue of material fact regarding whether his employer had good cause to terminate his employment because not every employee complained about his performance. Sullivan, ¶ 27. Arguing issues of material fact because of a lack of unanimity among all of your subordinates and co-workers that you were bad at your job is hardly the equivalent of a two-to-one vote among the superiors responsible for terminating your employment.
¶29 The Court contends that this Dissent fails to recognize that county commissions make decisions every day on two-to-one votes, and then illustrates its point with yet another inapt citation to the general proposition that “mere disagreement about the interpretation of a fact or facts does not amount to genuine issues of material fact.” Opinion, ¶ 21 (citing Ternes, ¶ 27). Yet what the Court apparently fails to recognize is the obvious and fundamental difference between a mere disagreement between opposing parties about the interpretation of a fact or facts, and a disagreement among those responsible for making the decision to discharge an employee regarding the ultimate decision to discharge. One expects opposing parties to disagree—that is, after all, what makes them opposing. However, the dissenting Commissioner’s opinion that Bird should not have been discharged was not a “mere disagreement about the interpretation of a fact or facts” between opposing parties; it was effectively an admission by a party opponent. Is this alone sufficient to guarantee Bird’s success at trial? Of course not. It is, however, sufficient—when considered with the other circumstances of Bird’s discharge—to survive summary judgment.
¶30 Aside from the affirmative declaration of one of the three Commissioners that Bird should not have been discharged, equally problematic for me is reconciling the Court’s resolution of this case *80 with our recent decision in Moe. In Moe, we affirmed the District Court’s denial of summary judgment because we concluded there were factual issues that precluded summary judgment in favor of the County. To begin with the facts that distinguish Moe from this case: (1) the plaintiffs name was Moe, not Bird; (2) the county’s name was Silver Bow, not Cascade. Beyond those two distinguishing facts, the cases become startlingly similar.
¶31 At the time that Moe was placed on administrative leave pending an investigation, she had been the human resources director for Silver Bow County for approximately four years. Moe, ¶¶ 4-5. At the time that Bird was placed on administrative leave pending an investigation, she had been the human resources director for Cascade County for approximately four years. Opinion, ¶¶ 3, 6. The District Court in this case found that the County “terminated Bird for failing to perform her job duties, insubordination, use of public property for private purposes, and disrespect to other employees.” Opinion, ¶ 15. In Moe, the County “terminated Moe’s employment based on her failure to perform her job duties, disruption of County operations, and ‘other legitimate business reasons.’ ” Moe, ¶ 51. The “other legitimate business reasons” Silver Bow County alleged for Moe’s discharge included:
employee complaints regarding Moe’s job performance and behavior, Moe’s unresponsiveness to [Silver Bow County Chief Executive] Vincent’s requests for further communication, Moe’s failure to inform Vincent of potential wage claims—including one in which Moe stood to gain the most significant financial benefit—and Moe’s participation in a conference call in her County office during working hours with an attorney who was representing the employees pursuing potential wage claims against the County.
Moe, ¶ 51.
¶32 The Court distinguishes this case from Moe by stating that the employee in Moe “presented exhaustive responses to the allegations against her,” Opinion, ¶ 18 (quoting Moe, ¶ 62), whereas, in the Court’s view, “the majority of Bird’s responses amount to conclusory statements, speculative assertions, and mere denials.” Opinion, ¶ 19 (quoting Moe, ¶ 63) (internal quotation marks omitted). The Court then provides a handful of examples it contends demonstrate the inadequacy of Bird’s response. Opinion, ¶ 19.
¶33 The Court’s first example is Bird’s response to the County’s charge that she disclosed confidential information regarding an employee’s *81 pay. Opinion, ¶ 19. In its due process letter, the County alleged that Bird had access to this private information in her capacity as human resources director and then “disclosed [this] constitutionally protected information.” As the Court notes, Bird responded to this charge by stating that she had not breached any confidential information, because the employee had publicly discussed the information, so it was no longer confidential. Opinion, ¶ 19. This is a curious example of one of Bird’s inadequate responses because, although this Court finds the response inadequate, in its termination letter the County “confirmed [Bird’s] assertion.” Having confirmed Bird’s assertion, the County then moved the goalpost from a charge of “di.sclo.sl ing I constitutionally protected information,” to a conviction of being “discourteous and disrespectful, in violation of Personnel Policy Manual paragraph 40.3.” So having successfully refuted the charge of disclosing constitutionally protected information, Bird was found guilty of a different charge, in violation of a Personnel Policy Manual provision that was not cited as a basis for discharge in the now ironically named “due process” letter. Yet this specific violation—that Bird was never afforded the opportunity to respond to—provided part of the basis for her termination.
¶34 Bird prefaced her response to the County’s due process letter with the statement: “I am at a distinct disadvantage by not having access to my manuals and files to provide a comprehensive and thorough response with dates and full and accurate information. I will be providing information to the best of my ability to recall the facts.” With that disadvantage being noted, Bird then proceeded to respond to the County’s allegations, literally paragraph-by-paragraph, over the course of her six-page, single-spaced response. Although this Court found Bird’s response to be inadequate, as noted above the dissenting Commissioner found her responses “logical” and sufficient for him to vote against terminating Bird’s employment.
¶35 Finally, I disagree with the District Court’s conclusion of “no evidence that [the] County’s reasons for [Bird’s] termination are pretextual or dishonest.” Bird was placed on administrative leave and noticed up for an investigation exactly one week after she and the other department heads declined to meet with the Commissioners individually regarding their requested market pay adjustments. Both the due process letter and the termination letter leave little doubt that it was this activity that precipitated the initial action taken against Bird. The three principal allegations against Bird—(1) using public time, facilities, equipment, and personnel in an attempt to influence the outcome of the November 6, 2012 election; (2) disclosing *82 confidential information to the public; and (3) disclosing confidential information acquired in the course of official duties to further her personal economic interests—all are based on the drafting of, and information contained in, the October 12, 2012 and October 19, 2012 letters requesting market pay adjustments. Bird asserted that she was being singled out for discipline to make an example of her, and pointed out that none of the other department heads who signed the letters were subject to discipline. While the fact that none of the other department heads were subject to discipline is not dispositive that Bird was singled out, it does give rise to a reasonable inference that the letters, in and of themselves, did not provide a basis for discharge; otherwise, all the signatories would have been subject to the same disciplinary action as Bird, unless the basis for the action against her was “false, whimsical, arbitrary, or capricious.” See Davis, ¶ 10. This then requires scrutiny of the three stated bases that are ostensibly unique to Bird’s conduct relative to the creation and distribution of the two letters.
¶36 As to the first alleged basis—using public time, facilities, equipment, and personnel in an attempt to influence the outcome of the November 6, 2012 election—the two commissioners who voted for Bird’s termination acknowledged that the October 12 and October 19 letters were created during off-duty hours. They further acknowledged Bird’s response that she “and the other Department Heads worked to ensure that the use of e-mail was a ‘personal limited use,’ which is allowed by policy.” While conceding that “County policy allows the limited use of e-mail for personal use,” the Commissioners pointed out that County policy does not allow the use of computer systems for campaign purposes, and they asserted this was the real motivation for drafting the letters, based on their subjective credibility findings of Bird and other witnesses interviewed on the subject, from which they concluded, “that [Bird’s] response is not credible.” While it is possible that Bird and the other County department heads who signed the October 12 and October 19 letters were motivated by a grand design to influence the November 6, 2012 election, as the two Commissioners subjectively concluded, is there not at least an equal possibility that Bird’s request for a pay raise was just that—a request for a pay raise? Sure, I guess Bird’s actions could have all been part of some grand “October Surprise” conspiracy, but is there not at least a reasonable inference that Bird is one of those wacky employees who just wanted to make more money? Far more troubling than the Court’s inclination to hear hoofbeats and think of zebras, though, is the acceptance of one party’s subjective finding that the opposing party is not credible as *83 being sufficient to establish an absence of material fact.
¶37 Regarding the second and third principal allegations—disclosing confidential information to the public and disclosing confidential information acquired in the course of official duties to further Bird’s personal economic interests—as noted above, Dissent, ¶ 33, the County morphed those allegations into a conclusion that Bird was “discourteous and disrespectful, in violation of Personnel Policy Manual paragraph 40.3.” Aside from the obvious due process implications of basing a discharge on an alleged violation to which an employee was never afforded the opportunity to respond, such a malleable basis for discipline should at least give rise to an inference that the originally stated basis for discharge was pretextual.
¶38 The County levels several other allegations against Bird that it contends arose “[i]n the course of’ reviewing the three principal allegations. These are: improper management of staff; implementing policies without formal approval or, if approved, not implementing them consistently; and failure to understand key aspects of her position as human resources director. In sustaining these allegations against Bird, the County again largely relied on the subjective credibility determinations of the two Commissioners who voted for Bird’s discharge. For example, regarding the allegation that Bird mismanaged her staff, she responded: “I find this [allegation] absurd and truly don’t believe it.” Bird then provided examples of her staffs statements and conduct that she contended belied the allegation. In the termination letter, the two Commissioners sustained the allegation by stating at the outset: “[Y]ou ‘truly don’t believe it.’ However, we do.” The two Commissioners then noted that they “find credible” an unidentified employee’s report concerning a statement Bird allegedly made about a third employee. This again is what caused the dissenting Commissioner to find that the situation was a “he said / she said” but what this Court concludes to be an absence of material fact.
¶39 Finally, the Court concludes that “even if Bird was singled out from the group of department heads who submitted letters to the Board, this does not demonstrate pretext.” Opinion, ¶ 24. The Court arrives at this conclusion because it characterizes the two letters, signed by the six department heads, as organizing a collective bargaining unit, which supported the County’s assertion that Bird was unsuited for her job because she should have understood this was not allowed. Opinion, ¶ 24. To be clear, this “collective bargaining” process commenced with a letter that begins: “This is being respectfully submitted in accordance with Cascade County Policy Section 40.6 Problem Solving Process, bringing our problems and concerns to *84 management.” The letter then concludes by requesting a meeting with the Commissioners to discuss why two department heads received pay raises while six others did not. In other words, these six department heads requested a sit-down, pursuant to Cascade County policy, to discuss what they perceived as disparate treatment in their ranks. This was not Bird standing on a table in the commission chambers, holding up a piece of cardboard with “UNION” scrawled across it.[1] Did Bird’s activities demonstrate a “faillure I to understand the basic principle that management officials have no legal authority to bargain collectively,” justifying Bird’s termination, as this Court concludes? Opinion, ¶ 24. Or has the County mischaracterized Bird’s activity as a pretext for her termination? That might have been an interesting question for a jury.
¶40 Finally, the Court concludes that the “no confidence” letter that Bird signed regarding only two of the three Board members also demonstrates a lack of professionalism and an unwillingness to engage in a “more collaborative approach to problem-solving.” Opinion, ¶ 24. This is a troubling conclusion, because it appears to endorse the idea that a public employee who criticizes an elected official could be subject to discipline, and even termination, based on the premise that the employee was unprofessional and lacked a “more collaborative approach to problem-solving.” I trust the Court is not suggesting that a public employee, even a department head, forfeits her right to engage in public discourse by virtue of her employment. Equally troubling is the Court’s failure to recognize that the two Board members who were the subject of the “no confidence” vote were the same two Board members who voted to terminate Bird’s employment. This is not to suggest that these two Board members were, in fact, motivated by the no confidence vote to terminate Bird’s employment, merely that a reasonable inference can be drawn from this fact that the termination was pretextual.
1 ¶41 There is little question that the County’s initial action against Bird was precipitated by the letters, signed by her and the other department heads, seeking an increase in pay. Regardless of what precipitated the County’s action against Bird, I agree that there is a case to be made that Bird’s performance as human resources director was deficient in some respects. Regardless of these performance issues, however, there is at least a reasonable inference that if Bird had never attempted to get a raise, she would still be working as Cascade *85 County’s human resources director, and that her termination was pretextual. Irrespective of the pretext issue, there also is a legitimate question as to whether Bird’s performance warranted termination or, as the dissenting Commissioner testified, some lower level of discipline. The ultimate question of whether Bird’s discharge was motivated by, or merely precipitated by, her attempts to get a pay raise is a question for a jury to decide. It is not a question that is susceptible to summary disposition. Therefore I dissent.

 Norma Rae (20th Century Fox 1979).